PD-1232-15

PD-1232-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 10/12/2015 12:00:00 AM
Accepted 10/14/2015 4:22:48 PM
ABEL ACOSTA
CLERK

NO.

# IN THE COURT OF CRIMINAL APPEALS OF

# OF THE STATE OF TEXAS

# AT AUSTIN, TEXAS

_____

No. 14-14-00204-CR
IN THE COURT OF APPEALS
FOR THE
FOURTEENTH SUPREME JUDICIAL DISTRICT
AT HOUSTON

_____

| NEVA JANE GONZALES | § | APPELLANT |
| V. | § | |
| STATE OF TEXAS | § | APPELLEE |

_____

APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

_____

J. SIDNEY CROWLEY
214 Morton St.
Richmond. Tx. 77469
TBC No. 05170200
Attorney for Appellant

FILED IN
COURT OF CRIMINAL APPEALS

October 14, 2015

ABEL ACOSTA, CLERK

TRIAL JUDGE
Hon. Mary Lou Keel
232nd District Court of Harris County

APPELLANT
Neva Jane Gonzalez
Texas Department of Criminal Justice
Correctional Division

TRIAL COUNSEL
 R. P. Cornelius
Laura Cornelius
2028 Buffalo Terrace
Houston, Texas 77002

APPELLATE COUNSEL
J. Sidney Crowley
214 Morton St.
Richmond, Texas 77469

STATE OF TEXAS
Katherine McDaniel
District Attorney, Harris County
1201 Franklin St.
Houston, Texas 77002

Lindsay Vanik
Assistant District Attorney
Harris County, Texas

# TABLE OF CONTENTS

INTERESTED PARTIES.....................................................................................2

LIST OF AUTHORITIES...............................................................................4

STATEMENT REGARDING ORAL ARGUMENT.................................................5

STATEMENT OF THE CASE..........................................................................6

STATEMENT OF THE PROCEDURAL HISTORY OF THE CASE.....................7

GROUNDS FOR REVIEW................................................................................8

GROUND FOR REVIEW NUMBER ONE

> The Court of Appeals erred when it held that the refusal of the trial court
>
> to instruct on the law of self defense was harmless error...............................9

PRAYER FOR RELIEF....................................................................................12

CERTIFICATE OF COMPLIANCE.....................................................................13

CERTIFICATE OF SERVICE...........................................................................13

APPENDIX  A. (OPINION BELOW).................................................................14

## LIST OF AUTHORITIES

Cases

Almanza v. State, 686 S.W.2d 157, 171 (Tex.Crim.App. 1985)...............................9

Cornet v. State, 417 S.W.3d 446, 451 (Tex.Crim.App. 2013).................................10

Ferrel v. State, 55 S.W.3d 586, 591 (Tex.Crim.App. 2001)....................................9

Johnson v. State, 157 S.W.3d 48 (Tex.App.-Waco 2004)........................................9

Prenger v. State, 108 S.W.3d 501 (Tex.App.-Houston [14th Dist.] 2003, ref'd).......9

## STATEMENT REGARDING ORAL ARGUMENT

Appellant believes that oral argument is not necessary in this case.

## STATEMENT OF THE CASE

TO THE HONORABLE COURT OF CRIMINAL APPEALS:

Appellant was convicted by a jury of the felony offense murder and assessed a punishment of confinement in the Texas Department of Criminal Justice, Correctional Division, for life.

STATEMENT OF THE PROCEDURAL HISTORY OF THE CASE

Appellant's appeal was affirmed in an unpublished opinion of the Fourteenth Court of Appeals rendered August 14, 2015. No motion for rehearing was filed.

# GROUNDS FOR REVIEW

GROUND FOR REVIEW NUMBER ONE:

The Court of Appeals erred when it held that the refusal of the trial court to instruct on the law of self defense was harmless error.

## GROUND FOR REVIEW NUMBER ONE

The Court of Appeals erred when it held that the refusal of the trial court to instruct on the law of self defense was harmless error.

### Argument and Authorities

A defendant is entitled to an instruction on self-defense if the issue is raised by the evidence, whether that evidence is strong or weak, unimpeached or contradicted, and regardless of what the trial court may think about the credibility of the defense. Ferrel v. State, 55 S.W.3d 586, 591 (Tex.Crim.App. 2001); Johnson v. State, 157 S.W.3d 48 (Tex.App.-Waco, 2004).

The appellate court reviews the evidence in the light most favorable to the defendant to determine whether a defensive issue should have been submitted. Prenger v. State, 108 S.W.3d 501, (Tex.App.-Houston [14th Dist.], 2003, ref'd). In Appellant's case, the aforementioned evidence raised the issue of self defense. A .22 caliber rifle was in fact located in the room where the complainant was found. The testimony of Appellant, as relayed by the officer to Alvarado, was that Appellant had claimed that the complainant pointed a gun at her and she then acted in self defense. This was sufficient to justify a jury instruction.

Since the trial court denied the requested instruction, reversal is required if Appellant suffered "some harm" as a result of the denial. Almanza v. State, 686

S.W.2d 157, 171 (Tex.Crim.App. 1985). The actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole. Ovalle v. State, 13 S.W.3d 774, 786 (Tex.Crim.App. 2000).

In Appellant's case, the only direct testimony that Appellant stabbed the complainant was from Samuel Alavarado. Alvarado was an accomplice witness as a matter of law, and therefore his testimony was automatically suspect. Alvarado also had an ongoing business relationship with the complainant involving the sale and delivery of illegal drugs. It would not be beyond the realm of possibility that the complainant attacked Appellant in a dispute over drugs. The trial court's action precluded the jury from considering her claim that she had acted in self defense when the complainant pointed a gun at her.

The Court of Appeals agreed that the evidence at trial raised the issue of self defense and that it was error to refuse to instruct the jury on that issue. The Court of Appeals however also held that the error was harmless because no actual harm was shown. The Court of Appeals in effect made its own credibility assessment of the evidence and deprived Appellant of the right to have a properly instructed jury make that determination. As this Court noted in Cornet v. State, 417 S.W.3d

446(Tex.Crim.App. 2013), "[i]n general, when there is a single offense tried before a jury, it is impossible to determine how a jury would have weighed the credibility of the evidence on a defensive issue, and therefore appellate courts have reversed convictions in order to permit the jury to decide whether it believes the defensive evidence." Id at 451. The Court of Appeals disregarded this well settled principle when it substituted its own view of the evidence and held that the refusal of the jury instruction did not result in "some harm" to Appellant.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Petitioner prays that this Court grant this Petition for Discretionary Review, that the case be set for submission; that after submission this Court reverse the judgement of the Court of Appeals and remand for a new trial

Respectfully submitted,

/s/ J. Sidney Crowley

J. Sidney Crowley
214 Morton St.
Richmond, Tx. 77469
(281)232-8332
TBC No. 05170200

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing document contains 1082 words, generated by computer.

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing instrument has been e-served to the Harris County District Attorney's Office, and to Lisa C. McMinn, State Prosecuting Attorney, P.O. Box 12405, Austin, Texas 78711, this the 12th day of October, 2015.

/s/ J. Sidney Crowley

**Affirmed and Opinion filed August 13, 2015.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-14-00204-CR

---

**NEVA JANE GONZALES, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 232nd District Court
Harris County, Texas
Trial Court Cause No. 1376224**

---

### O P I N I O N

In this appeal from a conviction for murder, the only question is whether the trial court reversibly erred when it denied a requested instruction on the law of self-defense. Because the evidence raised the issue of self-defense, we conclude that the trial court did err by refusing to give the requested instruction. However, based on the record as a whole, we conclude that the error was harmless. We therefore affirm the trial court's judgment.

# BACKGROUND

Appellant lived in an apartment with her boyfriend, Samuel, and the complainant, Jose. All three roommates had a history of substance abuse. Jose was a chronic alcoholic who suffered from cirrhosis. He was also a drug dealer. Because his cirrhosis impeded many of his physical abilities, Jose depended on Samuel to deliver drugs to his customers. Jose compensated Samuel with crack cocaine, which Samuel routinely shared with appellant.

In February of 2013, the three roommates relocated to a new apartment complex. Jose hired a young man named Jonathan to help him with the move because Jose lacked the strength to move his belongings himself. Jose also invited a young woman named Jennifer to help him unpack. Like the three roommates, Jonathan and Jennifer suffered from similar problems with addiction.

As Jose was still unpacking, Samuel approached Jose in his bedroom and asked for drugs to make another delivery. Jose kept his drugs in a small black safe, where he also stored his cash. Jose gave the drugs to Samuel, who then left without incident.

When Samuel returned to the apartment after making his delivery, appellant angrily confronted him for having been gone for a long time. Samuel crudely told appellant to "shut up with some profanity." Samuel then attempted to meet with Jose, but the door to Jose's room was locked. Jose came out a few minutes later with a plate of crack cocaine, which he left in the kitchen for the others to share. Samuel, Jonathan, and appellant got high on the crack cocaine. Jose and Jennifer did not participate.

At some point, appellant left the kitchen by herself and headed towards the rear of the apartment. When she returned, she hit Samuel on the back of the head

without warning or provocation. Because he was high at the time, Samuel could not recall whether appellant hit him with a particular object, but he claimed that the strike left a "nice size lump" on his head. The evidence suggests that appellant may have hit Samuel with a baseball bat because Samuel fought back against appellant and wrestled her for control of a baseball bat.

The wrestling carried into the living room, where Samuel and appellant banged up against a wall and knocked over a picture hanging. Samuel eventually grabbed the baseball bat and used it to hit appellant. Jonathan verbally objected at this point, saying that Samuel should not hit a woman.

Samuel stopped fighting with appellant, but he redirected his frustrations towards Jonathan. Samuel was upset that Jonathan had failed to warn him before appellant struck him on the back of the head. Samuel also grew suspicious that Jonathan may have come to the defense of appellant because of "some hanky panky" between the two.

In an apparent move to change the subject, appellant interjected with an accusation that Jonathan had taken an unspecified object from Jose. Samuel asked appellant why she waited so long to alert him of the alleged theft, but he never got an answer.

When Samuel turned to Jonathan for answers, Jonathan fled the apartment and ran into the courtyard outside. Samuel and appellant both gave chase. Jonathan tried to convince the two that he had not taken anything from Jose. To prove his point, Jonathan emptied his pockets and stripped away most of his clothes. Appellant seized the opportunity to attack Jonathan with a screwdriver. It is not clear where appellant obtained the screwdriver, but neighbors heard the commotion and dialed 911.

Samuel eventually convinced appellant to stop her attack on Jonathan. Samuel then tried to persuade Jonathan to come back inside the apartment to discuss the alleged theft. Samuel grabbed Jonathan by the wrist, but Jonathan broke free and ran away on foot. Samuel chose not to pursue Jonathan any further because he saw police pulling into the apartment complex. Samuel and appellant reentered their apartment, but they did not shut the front door.

When the police arrived, two officers stopped outside the front of the apartment and announced their presence. One of the officers made eye contact with appellant, whom he recognized from a prior encounter. Appellant smiled back at the officer, and then she went into Jose's room, where she joined Jose, Jennifer, and Samuel.

The officers heard a strange noise inside of Jose's bedroom, which sounded "as if people were fighting or a scuffle as things falling left and right." The officers twice demanded the occupants to come outside with their hands up, but they received no response. After their third demand, Samuel stepped outside of the room, carrying a large and bloody knife above his head. Samuel set the knife down on a sofa and surrendered himself to police. Appellant exited the room next wearing a bloody shirt. According to the officers, Samuel and appellant were both screaming, "He has a gun! It was self-defense!"

After securing the scene, the officers entered Jose's bedroom, where they found Jose and Jennifer lying in a pool of blood. There was an overpowering scent of bleach, which the officers described as "freshly poured," and it was making them cough and causing their eyes to water. The officers pulled Jose and Jennifer into the living room, away from the bleach, so that they could be treated by emergency medical personnel. Jennifer survived, but Jose did not.

The only firearm discovered in Jose's bedroom was an unloaded rifle. The officers found the rifle inside of its case, tucked neatly under the bed and against the wall. The rest of the room appeared to be ransacked.

Samuel and appellant were both charged with capital murder under the theory that they intentionally killed Jose during the course of a robbery. Jennifer testified during appellant's trial, but she could not remember much of anything from the incident. She suffered one stab wound to the head, multiple stab wounds to the torso, and a chemical burn across the shoulders.

The State's chief witness at trial was Samuel. He explained that he went into Jose's bedroom after Jonathan ran away because he wanted to find the crack cocaine and flush it down the toilet before the police could get there. Samuel indicated that Jose and Jennifer had both been popping pills and that they appeared to be "stoned" on Jose's bed.

Denying any personal involvement in the attack, Samuel testified that it was appellant who came into the room and, without explanation, started stabbing Jose with a large kitchen knife. Samuel claimed that he grabbed the knife from appellant and told her to stop, but she did not relent. Appellant pulled Jennifer off the bed and proceeded to kick her in the face. At one point, appellant also picked up the small black safe and used it to strike Jennifer over the head. Appellant emptied a bottle of bleach on Jennifer before finally leaving the room.

Samuel admitted that he gave a different story to police on the night of his arrest. He originally told the officers that Jose had hit him with the baseball bat because Jose was angry with the "raucous" disturbance that Samuel and appellant had caused. Samuel also told the officers that Jose had been waving his gun around. At trial, Samuel testified that he was lying when he gave these statements.

5

Samuel also disputed the officers' testimony that he had personally asserted a claim of self-defense.

Samuel essentially pinned all of the blame on appellant. He denied that he had received a promise of favorable treatment in exchange for his testimony.

Appellant never took the stand, and Jonathan was never called to give his version of the events. The jury acquitted appellant on the capital murder charge, but convicted her of the lesser-included offense of murder.

**SELF-DEFENSE INSTRUCTION**

In a single question, appellant asks whether the trial court reversibly erred when it denied a requested instruction on the law of self-defense. We review such questions under a two-step process, considering first whether the trial court erred by failing to give the instruction. *See Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). If the trial court did err, we analyze that error for harm under the procedural framework of *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1984).

**I.      Appellant was entitled to a self-defense instruction.**

The trial court must give a requested instruction on every defensive issue that is raised by the evidence. *See Krajcovic v. State*, 393 S.W.3d 282, 286 (Tex. Crim. App. 2013). A defensive issue is raised by the evidence if there is some evidence, regardless of its source, on each element of a defense that, if believed by the jury, would support a rational inference that the element is true. *See Shaw v. State*, 243 S.W.3d 647, 657–58 (Tex. Crim. App. 2007).

When deciding whether a defensive issue has been raised by the evidence, a court must rely on its own judgment, formed in the light of its own common sense and experience, as to the limits of rational inference from the facts that have been

6

proven. *Id.* at 658. The defendant is entitled to an instruction on a defense when there is legally sufficient evidence to raise the defense, regardless of whether the evidence supporting the defense is weak or contradicted, and even if the trial court is of the opinion that the evidence is not credible. *Id.* Whether the record contains such evidence is a question of law, which means that we do not apply the usual rule of appellate deference to the trial court's ruling. *Id.* "Quite the reverse, we view the evidence in the light most favorable to the defendant's requested submission." *Bufkin v. State*, 207 S.W.3d 779, 782 (Tex. Crim. App. 2006).

A person is justified in using deadly force against another when and to the extent that she reasonably believes that deadly force is immediately necessary to protect herself from the other's use or attempted use of unlawful deadly force. *See* Tex. Penal Code § 9.32. The State contends that there is no evidence to support this test because appellant did not admit to the stabbing and she did not establish that the stabbing was justified. We disagree.

Looking only at the evidence that supports the requested instruction, a jury could have found that appellant acted in justifiable self-defense. The officers testified that appellant exited Jose's room while screaming, "He has a gun! It was self-defense!" Based on that testimony, the jury could have made a rational inference that appellant admitted to using deadly force against Jose. Because appellant's statement further indicated that Jose had a gun, the jury could have also found that appellant used deadly force because she reasonably believed that deadly force might be used against her. Whether Jose was actually using or attempting to use deadly force against appellant is irrelevant, because appellant has a right to defend herself from an apparent danger to the same extent as she would if the danger were real. *See Hamel v. State*, 916 S.W.2d 491, 493 (Tex. Crim. App. 1996); *Jones v. State*, 544 S.W.2d 139, 142 (Tex. Crim. App. 1976) ("[I]t was not

7

necessary that the jury find that the deceased was using or attempting to use unlawful deadly force against appellant in order for appellant's right of self-defense to exist. It would be sufficient if the jury found that the appellant reasonably believed, as viewed from his standpoint at the time, that deadly force, when and to the degree used, if it was, was immediately necessary to protect himself against the use or attempted use of unlawful deadly force by the deceased.").

The State counters that appellant's statement to the officers is insufficient because it provides "no evidence of a factual or evidentiary basis for this claim." The only authority cited for this proposition is *Johnson v. State*, No. 05-11-01026-CR, 2012 WL 3553502 (Tex. App.—Dallas Aug. 20, 2012, no pet.) (mem. op., not designated for publication). As an unpublished case, *Johnson* has no precedential value. *See* Tex. R. App. P. 47.7(a). Even if *Johnson* did have precedential value, we would conclude that it is distinguishable because, unlike here, the defendant in that case did not affirmatively state, "It was self-defense!" *See Johnson*, 2012 WL 3553502, at *2–3 (considering whether the statement, "You bit me on my lip!" was sufficient to support a self-defense instruction).

The State also responds that appellant could not receive a self-defense instruction because she denied a role in the stabbing. The State's argument relies on statements made during closing arguments, but that reliance is flawed for at least two reasons. First, the arguments of counsel are not evidence. *See Freeman v. State*, 340 S.W.3d 717, 728–29 (Tex. Crim. App. 2011); *Woods v. State*, 301 S.W.3d 327, 332 n.1 (Tex. App.—Houston [14th Dist.] 2009, no pet.). And second, it should come as no surprise that appellant denied a role in the stabbing during closing arguments. By that time, the trial court had already denied her requested instruction on self-defense. If the charge did not allow for a justification defense,

8

appellant could not reasonably argue to the jury that she did the stabbing and still expect to be acquitted.

In one final argument, the State contends that appellant was barred from claiming self-defense because the evidence established as a matter of law that she was the one who "provoked the entire physical confrontation between all parties." The State's argument refers to Section 9.31 of the Texas Penal Code, which provides that the use of force against another is not justified "if the actor provoked the other's use or attempted use of unlawful force." *See* Tex. Penal Code § 9.31(b)(4).

A defendant forfeits the right of self-defense when she provokes another to make an attack on her so that she would then have a pretext for killing the other under the guise of self-defense. *See Smith v. State*, 965 S.W.2d 509, 512–13 (Tex. Crim. App. 1998). Here, Samuel provided uncontroverted testimony that the incident began when appellant hit him over the back of his head. This testimony would support a finding that appellant provoked an attack by Samuel, and that a claim of self-defense might be unjustified as to Samuel. However, the same cannot be said as to Jose. There is simply no evidence that appellant hit Samuel as a pretext for using deadly force against Jose. Accordingly, the evidence did not establish as a matter of law that appellant was barred from claiming self-defense.

Viewing the record in the light most favorable to the requested instructed, we conclude that there was some evidence from which a rational jury could find that appellant acted in justifiable self-defense. Therefore, the trial court erred by denying appellant's requested instruction.

## II.   Appellant was not harmed by the omission of a self-defense instruction.

Because appellant objected to the omission of the instruction, the *Almanza* framework instructs us that the judgment of conviction must be reversed if

appellant suffered "some harm." *See Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013). When applying the "some harm" standard, a reviewing court must determine whether the defendant suffered actual harm, as opposed to merely theoretical harm. *Id.* A court must consider several factors, including the jury charge as a whole, the arguments of counsel, the entirety of the evidence, and any other relevant information from the record. We address each of these factors in turn.

### A.    The Jury Charge

The charge in this case contained instructions on both capital murder and the lesser-included offense of murder. As to each offense, the charge authorized a conviction based on either a principal or party theory of liability.

The charge further included an accomplice-witness instruction, which stated that a conviction could not be had on the uncorroborated testimony of Samuel alone. The charge did not provide for any sort of justification defense.

### B.    The Arguments of Counsel

We first note that defense counsel never gave the jury a preview of appellant's defensive theory. During voir dire, counsel questioned the panel about its biases and qualifications. Counsel's questions did not signal or telegraph that self-defense might be a viable theory in the case.

Counsel also waived an opening statement when the case proceeded to a trial on the merits. In the absence of a statement from the defense, the jury received a one-sided view from the State as to what the evidence was expected to show. The State mentioned during its opening statement that appellant had asserted a claim of self-defense on the night of her arrest, but the State argued that the killing was unjustified and that appellant had stabbed Jose to death during the commission of a

10

robbery. The jury did not know whether appellant would continue to claim that she had acted in justifiable self-defense, or whether she would deny a role in the stabbing altogether and redirect blame towards another person.

After the State rested its case-in-chief, appellant recalled two of the crime scene investigators to the stand. As before, counsel declined the opportunity to give an opening statement and lay out appellant's defensive theory of the case.

During closing arguments, counsel broadly asserted two points. The first point was that appellant should not be convicted of capital murder because there was no evidence of a robbery. Counsel emphasized that no theft had been committed. Counsel also rejected the State's theory that appellant had ransacked Jose's room in the course of an attempted theft. Counsel explained that the room appeared to be in disarray because Jose was still in the process of unpacking. Counsel also suggested that appellant would not have ransacked the entire room if she knew that Jose's valuables were stored in his safe, which was out in the open.

Counsel's second point addressed the murder charge. The main theme of this argument was that Samuel was the culpable party, rather than appellant. Counsel emphasized that it was Samuel who exited Jose's bedroom with the bloody knife in hand. Counsel argued that Samuel was the true killer and that the jury should reject Samuel's testimony that he played no part in the killing.

Counsel attacked Samuel's credibility in several respects. Counsel began by reminding the jury that Samuel had two prior felony convictions for arson. Claiming that arson was a "sneaky dangerous crime," counsel implied that Samuel could not be trusted.

Counsel also pointed out that Samuel's testimony about the stabbing departed in a significant way from the findings of the medical examiner. Samuel

explained to the jury that he took the knife away from appellant after she stabbed Jose twice. However, the medical examiner found that Jose had been stabbed at least six times and that he had an additional cut on his left hand that went as deep as the bone.

Counsel encouraged the jury to refer to Samuel's original statements to police on the night of the murder. In those statements, Samuel claimed that he was attacked by Jose with a baseball bat because he and appellant were causing a disturbance in the apartment. Even though Samuel recanted those statements during trial, counsel asked the jury to credit the statements as true. Counsel's theory was that Jose attacked Samuel first, and then Samuel fought back in a drug-fueled rage: "He was smoking crack, got angry, and went off."

Counsel argued that the officers' testimony leant support to this theory. Counsel suggested that the officers had heard the scuffling in Jose's room before appellant had even entered it. Counsel also pointed out that appellant was in the room for no more than thirty seconds after the officers arrived. Counsel argued that Samuel must have done most of the stabbing before appellant even joined him inside.

Proceeding with the theory that Samuel was the principal actor in the murder, counsel argued that appellant could not be liable as a party. Counsel asserted that appellant was merely present at the scene, and that there was no evidence that she solicited, encouraged, directed, or aided in the commission of an offense.

## C.    The Entirety of the Evidence

There is a large body of evidence, which we need not repeat, that supports a finding that appellant used deadly force against Jose. By contrast, there is very

little evidence from which the jury could have reasonably found that the use of deadly force was justified. In fact, the overwhelming weight of the evidence suggests that deadly force was not justified.

The officers testified that appellant claimed self-defense based on the bare assertion that Jose had a gun. Photographs of the crime scene confirmed that Jose owned a rifle, but the rifle was unloaded. More importantly, the rifle was found safely stored in its case and under Jose's bed, where it was not easily within reach. Latent fingerprints were discovered on the rifle, but none of them belonged to Jose. When combined with the testimony that Jose was physically weak as a result of his cirrhosis, this evidence cuts against any claim that appellant reasonably perceived Jose as an immediate threat.

A claim of self-defense would also be questionable based on evidence linking appellant to the use of bleach. Samuel testified that appellant poured bleach on Jennifer after Jennifer had already been beaten on the ground. This testimony was further supported by evidence of bleach stains on the tops of appellant's shoes, which indicated that appellant was indeed the person who had poured the bleach. There was no evidence, however, that Jennifer ever presented a threat to appellant, or, if she did present a threat, that the threat needed to be neutralized with bleach. If the jury believed that appellant was responsible for pouring the bleach on Jennifer when Jennifer was already bleeding and beaten, the jury could have reasonably concluded that the use of bleach was deliberately callous. The jury could have also concluded that this behavior was unjustifiable, and therefore, that it did not comport with a claim that appellant had acted in justifiable self-defense against Jose during the same criminal episode.

## D.    Other Relevant Information

By convicting appellant of murder in the first degree, the jury had the option of sentencing her between five and ninety-nine years' or life imprisonment. No witnesses testified during the punishment phase, but additional evidence was admitted to aid the jury in its decision. The State produced evidence that appellant had three prior convictions, two of which were drug-related, and the third for prostitution. The defense produced mitigating evidence in the form of appellant's medical records, which showed an unfortunate history of abuse, depression, and suicidal tendencies.

Defense counsel asserted that he would not advocate for a specific term of years, but he suggested multiple times that a ten-year sentence would be appropriate in appellant's case. The State responded that a ten-year sentence would be on the low end of the spectrum, which may be fitting in a case of "borderline self-defense." "But," the State argued, "this isn't that. Don't give a break where a break isn't due." The State insisted that appellant committed a heinous crime and that she should be punished with the maximum of life imprisonment. The jury agreed with the State and sentenced appellant to life.

## E.    Harmless Error

The Court of Criminal Appeals has recognized that the erroneous omission of a confession-and-avoidance defense, such as self-defense, "is generally harmful because its omission leaves the jury without a vehicle by which to acquit a defendant who has admitted to all the elements of the offense." *See Cornet v. State*, 417 S.W.3d 446, 451 (Tex. Crim. App. 2013). For several reasons, that general rule does not apply here.

First, the only evidence that appellant "admitted" to the offense was the officers' testimony that she exited Jose's room screaming, "It was self-defense!" That statement was ambiguous though. It did not attribute Jose's killing to any particular actor when the evidence showed that the actor could have been Samuel individually, appellant individually, or both acting in concert.

Second, the possibility that Samuel was the true killer meant that the jury did have a vehicle to acquit. Indeed, that vehicle remained possible in part because appellant did not take the stand and admit to the killing herself. Likewise, defense counsel could have invoked a claim of self-defense in an opening statement, but by waiving an opening statement, counsel left the jury with the more difficult task of deciding for itself who was responsible for the killing. *See id.* at 455 (holding that the erroneous omission of a justification defense was harmless where counsel did not invoke the defense during either voir dire or opening statements and where the defense did "not appear to be the primary focus of [the] defensive theory at trial").

Third, the evidence weighed heavily against a finding that the use of deadly force was justified. Jose's weakened state, the out-of-reach storage of his untouched and unloaded gun, and the uncharacteristic pouring of bleach on another person all betray a suggestion that the jury would have accepted a claim of self-defense.

Finally, the jury's rejection of a short punishment in favor of life imprisonment—the maximum permitted by law—indicates that the jury believed that appellant was significantly blameworthy. *Compare Dugar v. State*, No. 14-14-00245-CR, — S.W.3d —, 2015 WL 1632690, at \*9 (Tex. App.—Houston [14th Dist.] Apr. 9, 2015, pet. filed) (holding that the erroneous omission of a self-defense instruction was harmful in part because the jury sentenced the murder defendant to twelve years' imprisonment, indicating a belief that the murder

defendant was not significantly blameworthy), *with State v. Warden*, No. PD-1502-10, 2011 WL 1157562, at *1 (Tex. Crim. App. Feb. 9, 2011, not designated for publication) (Keller, P.J., dissenting from the refusal of a petition for discretionary review) (opining that the erroneous omission of a self-defense instruction was probably harmless because the jury assessed punishment at sixty-five years' imprisonment, indicating a belief that the murder defendant was significantly blameworthy).

Having considered all of the pertinent factors, we conclude that appellant did not suffer actual harm from the trial court's failure to give a self-defense instruction.

## CONCLUSION

The trial court's judgment is affirmed.


/s/     Tracy Christopher
        Justice


Panel consists of Justices Christopher, Brown, and Wise.
Publish — Tex. R. App. P. 47.2(b).

16