**Affirmed and Memorandum Opinion filed June 20, 2019.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-17-00745-CR

---

### JOSE GUADALUPE GARCIA FLORES, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 351st District Court
Harris County, Texas
Trial Court Cause No. 1471756**

---

## MEMORANDUM OPINION

Appellant Jose Guadalupe Garcia Flores was convicted of aggravated assault with a deadly weapon. The jury assessed appellant's punishment at six years in prison. In two issues, appellant argues that the trial court erred when it (1) refused his request for jury instructions on the lesser offenses of class A and class C misdemeanor assault; and (2) denied his request for a jury instruction on self-defense. Finding no error, we affirm.

## BACKGROUND

Jose Gomez, the complainant, went to the Rancho El Dorado with his uncle and others for a rodeo. Appellant was also present at the rodeo that evening. Gomez and appellant knew each other as a result of their regular attendance at the Rancho El Dorado and they had an unfriendly relationship. According to Gomez, appellant had threatened to kill him, as well as his wife and children. As a result of this threat, Gomez tried to not "cross words with [appellant] or look at him."

On the night of the incident, Gomez was on his horse when it started to rain. He then rode his horse into the bar area at the Rancho El Dorado because that area was covered. It was then that Gomez saw appellant, who was standing near the bar with several friends, making rude hand gestures at him. According to Gomez, appellant was about fifteen feet away when he made the hand gestures. Gomez got off his horse and walked toward appellant to ask appellant "what was his problem." As Gomez walked toward appellant, appellant's friends blocked his way and he was unable to get closer than eight feet to appellant. According to Gomez, he was not armed, and he did not threaten appellant. Gomez's friend, Juan Carlos Vega Rojas, came up to him and they both turned around to walk away from appellant. As they were walking away, Gomez heard a gunshot. Gomez turned back around and saw appellant pointing a handgun at him. At that moment, Gomez decided to run toward appellant to try to take the gun away from him. Gomez grabbed appellant's hands and pushed them down. As they struggled, Gomez heard two more gunshots and he knew right away that he had been shot. Gomez was struck twice, once below his stomach and the second time in his groin. Even though he had been shot, Gomez was able to take the gun away from appellant and then hit appellant. Gomez fainted as he tried to hit appellant a second time. Gomez testified that his uncle took the gun away from him right

before he fainted. Gomez did not know what happened to the gun, which was never recovered.

Maximiliano Vega was friends with Gomez and he was with Gomez at the rodeo that night. Vega was sitting on his horse next to his brother, Juan Carlos, and Gomez, when Vega saw appellant standing with Rene Flores. Vega then saw Gomez get off his horse and walk toward appellant. According to Vega, Gomez tried to get close to appellant, but the crowd pushed him back. Vega then saw Gomez turn around and start walking back toward his horse. At that point, Vega saw Rene Flores pull out a gun. He then saw appellant grab the gun from Rene Flores and fire a shot at the ground. This gunshot spooked Vega's horse and it rode away with him. As a result, Vega did not see what happened next. He did, however, hear two more gunshots. After Vega got his horse under control, he dismounted, and walked back to where he saw Gomez laying on the ground, bleeding.

Juan Carlos was on his horse next to Vega and Gomez in the bar area. Vega told Juan Carlos that Gomez was heading toward appellant. Juan Carlos then saw appellant and Gomez arguing. He also observed that appellant looked angry. Juan Carlos then jumped down off his horse, grabbed Gomez by the arm, and started taking him away to avoid any problems. As they were walking away from appellant, Juan Carlos heard the first gunshot. Both men turned around and they saw appellant pointing a gun down at the ground. Appellant then raised the gun and pointed it at them. Gomez moved toward appellant to take the gun away from him. After Gomez tried to grab the gun away from appellant, Juan Carlos heard two more shots. Juan Carlos did not see Gomez get shot because Gomez's back was toward him. Later, Juan Carlos saw appellant running toward the stable, so he grabbed him. According to Juan Carlos, appellant struggled to get away. While

3

struggling, appellant told him that he still had the gun. At that point, Juan Carlos hit appellant once or twice. The police arrived, and Juan Carlos told them appellant was the person who had fired the shots.

Sergeant Juan Reynaldo of the Houston Police Department arrived on the scene to help interview Spanish-speaking witnesses. He also talked to appellant. According to Reynaldo, appellant told him that he had argued with Gomez, but that he did not shoot him.

At trial, appellant called three witnesses to testify. The first, Obidio Cisneros, a friend of appellant who was drinking with appellant in the rodeo's bar along with other friends. Cisneros saw Gomez come up to appellant and hit him in the back. According to Cisneros, appellant turned around and started defending himself. Cisneros testified that both men started punching each other. A crowd then gathered around, and Cisneros could no longer see anything. Cisneros then heard two shots. According to Cisneros, a friend tried to separate appellant and Gomez and it was then that he heard the two gunshots. Cisneros did not see either man, appellant or Gomez, with a gun. Cisneros testified that earlier that day, he had seen Gomez throw his horse on appellant in the arena. Finally, Cisneros testified that he saw an unidentified man with a gun, pointing it "in every direction when the shots happened."

Next, Rene Flores testified that he was friends with appellant. According to Flores, earlier in the day, when appellant and his friends were still on their horses, Gomez and his friends would ride their horses by and "kind of push the horses to us." Flores believed that Gomez was intoxicated that evening. Flores testified that there was a fistfight between appellant and Gomez. According to Flores, he was twelve to fifteen feet away when he saw the fistfight. Prior to the fistfight, Flores saw Gomez bothering appellant. Flores saw people trying to separate appellant

4

and Gomez, while others were "going to fight."

Flores did not see appellant or Gomez with a gun that night, but Flores did see a tall, young, Hispanic man, between twenty and thirty years old, wearing a big hat, and carrying a gun. Flores testified that the tall man was pointing the gun at everyone. Flores believed that the tall man with the gun was a friend of Gomez and that he had never seen the tall man at the Rancho El Dorado before the night of the shooting.

While appellant and Gomez were fighting, Flores heard three shots, two together, and then a third. Flores did not see the start of the fight between appellant and Gomez because he had taken his horse away from the bar area. When he returned from putting his horse away, there was a crowd of people and it was while he was standing behind the crowd that he saw the tall man with the gun. Flores testified that he did not tell the police what he had seen that night because he did not see any police walking around. Finally, Flores testified that he did not know Gomez had been shot until after the night of the shooting.

Victor Palacios, appellant's final witness, testified that he was friends with both appellant and Gomez. According to Palacios, Gomez was intoxicated that night. Palacios heard that appellant and Gomez were fighting, so he walked over but he did not see who started the fight. When he arrived at the location of the fight, he saw appellant and Gomez fighting, and several other people were fighting as well. Palacios believed there were a total of eight or nine people fighting. Palacios did not see appellant beating up Gomez or shooting at him.

According to Palacios, he leaned over to lift Gomez out of the fight. At that point, Palacios heard two gunshots. Palacios had to let go of Gomez because he saw a man pointing a gun at him. It was the first time Palacios had seen the man with the gun. Palacios described the man with the gun as skinny, dark, and not

very tall. Palacios testified that the man with the gun came out of the crowd of people who were fighting. Palacios also saw the man with the gun point it at other people. It was only after he had released Gomez that Palacios realized Gomez had been shot. Gomez did not tell Palacios who shot him. Palacios further testified that he does not know who shot Gomez, but he believed the shooter would have been underneath Gomez when the shooting occurred. Like Flores, Palacios did not speak to the police.

At the close of the evidence, appellant requested lesser-included offense instructions on misdemeanor assault. Appellant also requested a self-defense instruction. The trial court denied both requests. The jury found appellant guilty as charged in the indictment and assessed punishment at six years in prison. This appeal followed.

## ANALYSIS

### I. The trial court did not abuse its discretion when it denied appellant's request for lesser-included-offense instructions.

In his first issue, appellant argues that the trial court abused its discretion when it denied his request to include instructions authorizing the jury to find him guilty of the offenses of class A misdemeanor assault and class C misdemeanor assault. *See* Tex. Penal Code § 22.01. As explained below, we conclude that appellant has not demonstrated that the trial court abused its discretion when it denied his requested instructions.

In a prosecution for an offense with lesser-included offenses, the jury may find the defendant not guilty of the greater offense, but guilty of any lesser-included offense. Tex. Code Crim. Proc. art. 37.08. A charge on a lesser-included offense should be given when (1) the lesser-included offense is included within the proof necessary to establish the offense charged, and (2) there is some evidence in

the record that would permit a jury rationally to find that if the defendant is guilty, the defendant is guilty only of the lesser offense. *Sweed v. State*, 351 S.W.3d 63, 67 (Tex. Crim. App. 2011).

To make the determination whether the lesser-included offense is included within the proof necessary to establish the charged offense, we compare the statutory elements and any descriptive averments in the indictment for the greater offense with the statutory elements of the lesser offense. *Id.* This determination presents a question of law and does not depend on any evidence produced during the trial. *See Rice v. State*, 333 S.W.3d 140, 144 (Tex. Crim. App. 2011). For the second part of the analysis, we evaluate whether some evidence exists from which a rational jury could acquit the defendant of the greater offense while convicting the defendant of the lesser-included offense. *Sweed*, 351 S.W.3d at 68. The evidence must establish the lesser-included offense as a "valid, rational alternative to the charged offense." *Id.* To make this determination, we review all of the evidence introduced during the trial. *Id.* Anything more than a scintilla of evidence entitles a defendant to a lesser-included offense charge. *Id.* Although a scintilla of evidence presents a low threshold, it is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense. *Id.* Instead, there must be some affirmative evidence directly germane to the lesser offense for the finder of fact to consider before an instruction on a lesser-included offense is warranted. *See id.* If some evidence refutes or negates other evidence establishing the greater offense, or if the evidence presented is subject to different interpretations, then the standard is met, and the instruction warranted. *Id.* It is the jury's role, not the court's, to determine whether there is sufficient evidence to support a lesser-included offense. *Id.* at 69.

A person commits the offense of aggravated assault with a deadly weapon if

7

the person intentionally, knowingly, or recklessly "causes serious bodily injury to another . . . ." or intentionally or knowingly threatens another with imminent bodily injury and "uses or exhibits a deadly weapon during the commission of the assault." Tex. Penal Code Ann. § 22.02. A "deadly weapon" includes "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." *Id.* at § 1.07(a)(17)(B). A person commits class A misdemeanor assault if the person "intentionally, knowingly, or recklessly causes bodily injury to another[.]" *Id.* at § 22.01(b). A person commits class C misdemeanor assault if the person "intentionally or knowingly threatens another with imminent bodily injury," or "intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative." *Id.* at § 22.01(c).

In support of his argument that he was entitled to the lesser-included offense instructions, appellant points to case law holding that misdemeanor assaults may generally be lesser-included offenses of aggravated assault. Appellant then points to defense witness testimony that appellant "got in a fistfight with Mr. Gomez, provoked by Mr. Gomez, but that [appellant] was not the shooter." Appellant then argues that, as a result of these two things, the trial court should have included lesser-included offense instructions in the jury charge. Appellant however, does not address the impact of his indictment on this analysis.

In *Irving v. State*, the Court of Criminal Appeals observed that determining whether an offense is a lesser-included offense requires attention to the specific facts of each case. 176 S.W.3d 842, 845–46 (Tex. Crim. App. 2005). The court continued that "while simple assault may be a lesser-included offense of aggravated assault in some cases," it is not a lesser-included offense where "the conduct constituting the lesser-included offense for which [the defendant]

8

requested an instruction is different from the conduct which was alleged in the charging instrument . . . ." *Id.* at 845. In *Irving*, the defendant was charged with hitting the complainant with a baseball bat, but he requested an instruction for the offense of simple assault based upon evidence that he grabbed the complainant and fell on top of her. *Id.* at 845–46. The court held that because "the same facts or less than the same facts required to prove the greater aggravated assault offense [were] not required to prove the assault offense," the defendant was not entitled to the requested lesser-included offense instruction. *Id.* at 846; *see also Hayward v. State*, 158 S.W.3d 476, 479 (Tex. Crim. App. 2005) ("Hitting with fists could be a lesser-included offense of murder, but not as the murder was charged in the case.").

Appellant's indictment alleges that he caused bodily injury "by SHOOTING THE COMPLAINANT WITH A FIREARM." It does not allege that he caused bodily injury by punching Gomez with his fists. Misdemeanor assaults based on appellant striking Gomez with his fists are not lesser-included offenses of an aggravated assault based upon appellant shooting Gomez with a firearm because they do not involve the same conduct as the conduct charged in the indictment. As a result, while there was affirmative evidence from defense witnesses that appellant and Gomez punched each other, were part of a larger brawl, and that a third-party was the shooter, those facts do not require a lesser-included offense instruction here because they are different from those required to prove that appellant shot Gomez with a firearm as alleged in the indictment. *See Irving*, 176 S.W.3d at 845 ("What the court fails to consider, however, is that while simple assault may be a lesser-included offense of aggravated assault in some cases, here, [the defendant] is asking for a lesser-included offense instruction based on facts not required to establish the commission of the offense *charged*.") (emphasis in

9

original). The trial court therefore, did not err when it refused appellant's requested lesser-included offense instructions. *See id.* at 846; *Hayward*, 158 S.W.3d at 480 ("Whether the [defendant] assaulted the victim with her fists on this or some other occasion was not an issue that was included in the indictment. In other words, under this indictment, the State could not have secured a valid conviction for the assault that the [defendant] alleges she committed."). Because there was no jury-charge error, the harm analysis prescribed by *Almanza v. State* is not necessary. 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). Appellant's first issue is overruled.

## II. The trial court did not abuse its discretion when it denied appellant's requested self-defense instruction.

It is a defense to prosecution if a person's conduct is justified by Chapter 9 of the Texas Penal Code. Tex. Penal Code § 9.02. Under Chapter 9, one generally is justified in using force against another when and to the degree one reasonably believes the force is immediately necessary to protect oneself against another's use or attempted use of unlawful force. *Id.* § 9.31(a). When the force in question is deadly,[1] the person is justified in using such force in self-defense if the above test is met, and the person reasonably believed that deadly force was immediately necessary to protect himself against the other's use or attempted use of unlawful deadly force. *Id.* § 9.32(a). Appellant argues in his second issue on appeal that the trial court erred when it denied his requested self-defense instruction. We disagree.

A defendant is entitled to a jury instruction on self-defense when requested, if the issue of self-defense is raised by the evidence, "whether that evidence is

---

[1] "Deadly force" is force that is intended or known by the actor to cause, or in the manner of its use or intended use is capable of causing, death or serious bodily injury. Tex. Penal Code Ann. § 9.01(3).

10

strong or weak, unimpeached or contradicted, and regardless of what the trial court may think about the credibility of the defense." *Gamino v. State*, 537 S.W.3d 507, 510 (Tex. Crim. App. 2017). When reviewing a trial court's denial of a request for a self-defense instruction, we view the evidence in the light most favorable to the defendant's requested submission. *Id.* A trial court errs in denying a self-defense instruction if there is some evidence, from any source, when viewed in the light most favorable to the defendant, that will support the elements of self-defense. *Id.*

Recently, the Court of Criminal Appeals held that, a defendant may be entitled to a self-defense instruction, even if the defendant does not admit to every element of the offense and even if the defendant's version of what happened differs from the version told by the witnesses called by the State. *See Gamino*, 537 S.W.3d at 512. Though the defendant must admit to the alleged conduct giving rise to the indictment, admitting to this conduct does not necessarily mean admitting to every element of the charged offense. *See id.* For example, a defendant can "sufficiently admit to the commission of the offense" of murder even when denying an intent to kill. *See id.* (holding defendant charged with aggravated assault with a deadly weapon entitled to self-defense instruction even though he denied pointing his gun at and verbally threatening complainant but admitted displaying weapon because he felt threatened); *Martinez v. State*, 775 S.W.2d 645, 647 (Tex. Crim. App. 1989). Thus, the issue we must decide is whether appellant "sufficiently admitted" committing the offense.[2] As explained

---

[2] Appellant, citing *Gonzales v. State*, 474 S.W.3d 345 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd), contends that another panel of this Court "rejected the necessity of 'confession and avoidance' for a defendant to receive a self-defense instruction." While it is true this Court held the trial court erred when it denied the defendant's requested self-defense instruction, we disagree that this case rejected the confession and avoidance doctrine because in *Gonzales* there was evidence that the defendant had committed the crime, and the defendant only denied a role in the stabbing of the complainant during closing argument after the trial court had denied her requested self-defense instruction. *Id.* at 350.

11

below, we conclude that he did not.

Appellant has not pointed out any defensive evidence in the record where he sufficiently admitted to committing the offense. *See Gonzales*, 474 S.W.3d at 349 (record contained testimony by police offers that appellant exited the complainant's room while screaming "He has a gun! It was self-defense!"). Appellant himself did not testify, and all three defense witnesses testified that an unidentified third party, not appellant, had a gun. *See Lavern v. State*, 48 S.W.3d 356, 360 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd) ("While a non-testifying defendant may be entitled to a charge on self-defense, it is rare for the defense to be raised when the defendant fails to testify."). None testified that appellant had a gun and was the person who shot Gomez. Additionally, appellant has not pointed out any evidence in the record demonstrating that he reasonably believed that the use of deadly force was immediately necessary to protect himself against Gomez's use or attempted use of unlawful deadly force. Tex. Penal Code § 9.32(a). At most, there was evidence in the record of a fistfight between appellant and Gomez that evening, which is insufficient to justify the use of deadly force. *See Werner v. State*, 711 S.W.2d 639, 644 (Tex. Crim. App. 1986) ("In [the] absence of evidence of use or attempted use of deadly force by the deceased, the statutory defense permitted by § 9.32 is not available, and a defendant is not entitled to a jury instruction."); *Leibengood v. State*, 866 S.W.2d 732, 736 (Tex. App.—Houston [14th Dist.] 1993, pet. ref'd) ("Here, [defendant] never testified that he believed it was necessary to kill the victim to protect himself from death or serious bodily injury."); *Bray v. State*, 634 S.W.2d 370, 373 (Tex. App.—Dallas 1982, no pet.) ("As to the third element of Section 9.32, there is no evidence in the record that [the victim] used or attempted to use deadly force so as to justify Bray's deadly response. Bray does not articulate any apprehension that [the victim] was about to employ deadly force and neither the acts, nor words without acts, of [the

12

victim] can be said to threaten deadly force.").  We therefore conclude that the trial court did not err when it denied appellant's requested self-defense instruction.  We overrule appellant's second issue.

## CONCLUSION

Having overruled appellant's issues on appeal, we affirm the judgment of the trial court.

/s/     Jerry Zimmerer
Justice

Panel consists of Chief Justice Frost and Justices Zimmerer and Hassan.

Do Not Publish — TEX. R. APP. P. 47.2(b).