

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| CODY JOSEPH MORGAN, | § | No. 08-22-00013-CR |
| Appellant, | § | Appeal from the |
| v. | § | 19th Judicial District Court |
| THE STATE OF TEXAS, | § | of McLennan County, Texas |
| Appellee. | § | (TC# 2011-1673-C1) |

## **O P I N I O N**

Appellant, Cody Joseph Morgan, appeals the trial court's denial of his motion for post-conviction DNA testing under Chapter 64 of the Texas Code of Criminal Procedure. In a single issue, Appellant contends the trial court's findings were unsupported by the record and that the trial court consequently erred in concluding that Appellant failed to demonstrate his entitlement to DNA testing of a $20 bill purportedly found near the crime scene. We affirm.[1]

---

[1] This case was transferred from our sister court in Waco (10th District), and we decide it in accordance with the precedent of that court to the extent required by TEX.R.APP.P. 41.3.

# I. BACKGROUND

## A. Appellant's Post-Conviction DNA Motion

In 2013, a jury convicted Appellant of aggravated robbery and assessed his punishment at 22 year's imprisonment. In 2021, Appellant filed a Chapter 64 motion for post-conviction DNA testing of several items recovered by police during their investigation of the offense: a sweatshirt, a bandana, gloves, a BB gun, and a $20 bill. By then, all items other than the $20 bill, had been destroyed and were no longer in the State's possession.

As for the sole remaining item, Appellant's motion asserted that the $20 bill "potentially contain[ed] biological evidence that could exonerate [him]" in that it may "contain the DNA of someone other than [him]." Appellant asserted, and the State did not dispute, that identity was an issue at trial.

In response, the State argued that because the $20 bill had been "processed for fingerprints by dipping the bill into ninhydrin and hung to dry," it was unlikely to contain any biological material. Further, because the $20 bill in question had been found in the bushes outside the location of the robbery, Appellant could only speculate that it was connected to the robbery itself.

## B. Factual Background

The only facts appearing in the record are through two police reports and a letter filed in support of the State's DNA motion response.

From the police reports, the record shows that in November 2010, Waco police received a report of an aggravated robbery committed by a suspect using a black gun and wearing a hooded sweatshirt with the word "Cowboys" across the front. The suspect also had a red bandana over his face, a blue latex glove on his left hand, and brown, work-type glove on his right. Three weeks later, Waco police learned that, by a search of Appellant's vehicle in connection with four other

aggravated robberies in Travis County, the Travis County Sheriff's Department had recovered a "Cowboys" hooded sweatshirt, a BB gun, a box of latex gloves, and a pair of brown work gloves. Appellant confessed to the Travis County robberies.

Appellant's girlfriend thereafter told Travis County detectives that she and Appellant were in Waco visiting Appellant's mother on the date of the reported Waco robbery. Appellant left the mother's residence sometime during the night. And about a day later, Appellant confessed to her he had "hit a lick," which she explained meant he had committed a robbery.

As noted, Appellant's motion is now limited to the only item still retained by the State—a $20 bill. At the time of the investigation, the police unsuccessfully attempted to extract fingerprints from the $20 bill by dipping it in ninhydrin and hanging it up to dry. And in response to Appellant's motion, the State submitted a letter from the Texas Department of Public Safety (DPS) Crime Laboratory DNA Section Supervisor, Brent Watson. That letter stated, "Given the nature of currency and the frequency with which it changes hands, it is not a good candidate for DNA testing." Watson explained that the more people that touch an item, the more likely it is the item will contain a mixture of DNA profiles, which, in turn, makes it increasingly difficult (with each additional DNA contributor), to identify each individual DNA profile. Watson concluded that items containing DNA mixtures from five or more persons were "too complex and not suitable for comparisons."[2]

---

[2] Appellant's DNA motion and the State's response assert these other facts:

- The complaining witness stated that on November 10, 2010, a white or possibly Hispanic man, roughly 25 years old and wearing a grey hoody, dark grey shorts, and a red scarf over his face, rushed into the store, jumped over the counter, put a gun to his back, and made him open two cash registers, after which the man took the cash and left the scene. The victim identified someone other than Appellant in a photographic line-up.

- Surveillance footage showed the robber wearing a "Cowboys" hoodie and a latex glove on one hand and a work glove on the other. A crime-scene technician recovered a $20 bill either on the ground or in some bushes outside the store.

### C. The Trial Court's Ruling

The trial court entered a written order denying Appellant's DNA motion, stating, in pertinent part:

> The suspect wore gloves during the Robbery. The bill was located outside on the ground and the possessor of the bill prior to it being left on the scene is unclear. DNA testing of the bill would be fruitless based upon the letter of [Watson]. The bill could not provide the type of evidence to exonerate Movant as he alleges.

This appeal followed.

## II. DISCUSSION

In his sole issue, Appellant asks us to reverse the trial court's ruling denying his DNA motion because the $20 bill was suitable for DNA testing and favorable results excluding him as a DNA contributor on the $20 bill would more likely than not have led the jury to acquit him. Based on the record before us, we hold that the trial court did not err in denying Appellant's DNA motion.

### A. Standard of Review and Applicable Law

We generally review a trial court's ruling on a motion for DNA testing under a bifurcated standard of review, affording almost total deference to the trial court's determination of historical fact issues, as well as application-of-law-to-fact issues turning on witness credibility and demeanor. *Whitaker v. State*, 160 S.W.3d 5, 8 (Tex.Crim.App. 2004); *Rivera v. State*, 89 S.W.3d 55, 59 (Tex.Crim.App. 2002). Where, as here, the trial court did not conduct a live hearing, such

---

- Appellant's girlfriend told detectives that when she and Appellant left Waco after visiting his mother in November 2010, Appellant showed her "a bunch of money that was wadded up inside" the center console of his Ford Expedition and told her he had committed a robbery.

Because these added facts appear only in the pleadings, and not the exhibits supporting the pleadings, we do not consider them in this appeal. *See Gonzalez v. State*, 474 S.W.3d 345, 350 (Tex.App.--Houston [14th Dist.] 2015, pet. ref'd); *Elkins v. Stotts-Brown*, 103 S.W.3d 664, 669 (Tex.App.--Dallas 2003, no pet.) (noting motions and arguments of counsel are not evidence). But even if we did consider them, these other facts would not alter our view of the case.

4

that application-of-law-to-fact questions do not turn on the credibility and demeanor of witnesses, we review de novo the trial court's denial of DNA testing. *See Smith v. State*, 165 S.W.3d 361, 363 (Tex.Crim.App. 2005); *Rivera*, 89 S.W.3d at 59.

While "there is no free-standing due-process right to DNA testing," *Ex parte Gutierrez*, 337 S.W.3d 883, 889 (Tex.Crim.App. 2011), *citing District Attorney's Office v. Osborne*, 557 U.S. 52, 61-63 (2009), Chapter 64 of the Texas Code of Criminal Procedure allows a convicted person to file in the convicting court a motion for post-conviction DNA testing of evidence that has a reasonable likelihood of containing biological material. *See* TEX.CODE CRIM.PROC.ANN. art. 64.01(a-1). The motion may only request testing of evidence that the State was in possession of at the time of trial, and was either (1) not previously tested for DNA, or (2) "although previously subjected to DNA testing[,] . . . can be subjected to testing with newer testing techniques that provide a reasonable likelihood of results that are more accurate and probative than the results of the previous test[.]" *Id.* art. 64.01(b)(1), (b)(2)(A).

In order to grant DNA testing, a trial court must first find that: (1) the evidence "still exists and is in a condition making DNA testing possible"; (2) the evidence "has been subjected to a chain of custody sufficient to establish that it has not been substituted, tampered with, replaced, or altered in any material respect"; (3) "there is a reasonable likelihood that the evidence contains biological material suitable for DNA testing"; and (4) "identity was or is an issue in the case[.]" *Id.* art. 64.03(a)(1). Pursuant to article 64.03(a)(2)(A), the defendant must ultimately show by a preponderance of the evidence that he "would not have been convicted if exculpatory results had been obtained through DNA testing[.]" *Id.* art. 64.03(a)(2)(A).

5

**B. Analysis**

The parties do not dispute that identity was an issue in the case. Appellant challenges what he calls a "definitive finding" by the trial court that the $20 bill "could not provide the type of evidence necessary to exonerate [him]" because "no one can say with certainty how often[,] . . . or by how many different persons" the bill was handled, such that the trial court could not know if the $20 bill was handled by too many individuals to yield a meaningful result. Pointing to Watson's lack of questioning how the $20 bill's submersion in ninhydrin impacted any possible DNA analysis, Appellant argues that the trial court's "finding" that the $20 bill "could not provide the type of evidence necessary to exonerate [him]" is unsupported by the record because Watson's letter established that the $20 bill was "probably covered in DNA."

Appellant misinterprets the trial court's statement that the $20 bill "could not provide the type of evidence necessary to exonerate [him]" as a factual "finding" that the $20 bill likely contained no DNA. The court's statement must be read in context. The trial court first stated that the perpetrator wore gloves during the robbery, that the $20 bill was found outside the crime scene, and that it was unknown who handled the bill before it came to rest at the crime scene. Given these facts, the trial court concluded the $20 bill could not contain the *type* of evidence that would likely exonerate Appellant. In other words, the trial court concluded that Appellant failed to meet his burden to show that any exculpatory results would be relevant to Appellant's identity as the perpetrator because the $20 bill could not contain any *relevant* DNA, not that the $20 bill definitively contained *no* DNA. As discussed below, we agree with the trial court in this regard.

To be sure, Chapter 64 requires that we presume DNA testing of the item will yield exculpatory results, but "it does not require us to presume an item's relevance to the question of the offender's identity." *Reed v. State*, 541 S.W.3d 759, 775 (Tex.Crim.App. 2017). "[I]t is still

incumbent on [Appellant] to establish by a preponderance of the evidence that, assuming [the requested DNA tests] produce exculpatory evidence, the jury would not have convicted [him] in light of this additional, exculpatory evidence." *Routier v. State*, 273 S.W.3d 241, 257 (Tex.Crim.App. 2008). In this regard, Appellant has failed to meet his burden. That is, even if we presume testing will show his DNA is not on the $20 bill, and someone else's is, Appellant does not show this raises any serious question of his identity as the perpetrator.

First, the record lacks any specific information of how the $20 bill is connected to the crime scene. The only information about the origin of the $20 bill comes from the parties' assertions in their pleadings, which themselves do not constitute evidence. *See Gonzalez*, 474 S.W.3d at 350; *Elkins*, 103 S.W.3d at 669. But even if the record did show, as the parties allege, that the $20 bill was found outside or near the scene of the robbery, it still does not tell us when the $20 bill was retrieved from the scene by police or indicate how it signified anything more than an effort by police to be thorough in collecting items near and around the crime scene. *See Reed*, 541 S.W.3d at 775 (in context of Chapter 64 motion, holding other than their proximity to the commission of the crime, appellant failed to establish why items were relevant to identifying perpetrator); *Ex parte Thompson*, No. 08-20-00067-CR, 2021 WL 2678480, *7 (Tex.App.-- El Paso, June 30, 2021, no pet.) (not designated for publication) (appellant failed to establish relevance of requested items where, as to some, record did not indicate who used or owned them, and as to other item, it was not connected to the crime scene).

The $20 bill's relevance becomes even more questionable given that currency exchanges hands regularly as it is circulated in the economy, such that finding DNA from an individual other than Appellant would prove nothing but this fact and not that the DNA came from a different perpetrator. *See Ex parte Gutierrez*, 337 S.W.3d at 900-01 (appellant failed to show relevance of

7

favorable DNA results to identity issue because there was "no way of knowing" whether DNA came from the assailants); *Webb v. State*, No.10-18-00170-CR, 2021 WL 4900926, *2, 4 (Tex.App.--Waco, Oct. 20, 2021, no pet.) (mem. op., not designated for publication) (rejecting appellant's claim that DNA testing could "prove that somebody else did what the State claim[ed] I did," where he could not show instrumentalities of crime were handled only by perpetrator and where it was "entirely possible" they were handled by others, "including those who did not perpetrate this crime"). Nor would it be surprising to find that Appellant's DNA was not on the $20 bill when the victim described the robber as wearing gloves on both hands. Thus, any favorable DNA results would not necessarily remove Appellant from the crime scene. *See Ex parte Gutierrez*, 337 S.W.3d at 892 (exculpatory results that merely "muddy the waters" cannot meet appellant's burden that he would not have been convicted).

Moreover, the limited record before us shows that Appellant admitted to his girlfriend, shortly after the reported Waco robbery, that he committed a robbery in Waco and that Appellant was in Waco on the date of the robbery. *See Ramirez v. State*, 621 S.W.3d 711, 722 (Tex.Crim.App. 2021) (defendant's confession is properly considered in determining whether he met his burden under article 64.03(a)(2)(A)). Appellant was also connected to the robbery by the "Cowboys" hoodie, box of latex gloves, and pair of work gloves recovered from his vehicle, which matched the complaining witness' description of the robber. Again, we fail to see how the presence of DNA from a third party on the $20 bill would undermine this other evidence of Appellant's identity as the perpetrator. *See Hall v. State*, 569 S.W.3d 646, 656 (Tex.Crim.App. 2019) (even when presence of third party's DNA tends to be exonerating, defendant's burden is not satisfied "if the record contains other substantial evidence of guilt independent of that for which [he] seeks DNA testing").

In sum, Appellant has failed to present a record, or arguments, such that we can tell how the exculpatory results "would alter the landscape if added to the mix of evidence that was available at the time of trial." *Holberg v. State*, 425 S.W.3d 282, 285 (Tex.Crim.App. 2014); *see Reed*, 541 S.W.3d at 774 (instructing that accused must show greater than 50% likelihood he would not have been convicted if proposed testing's exculpatory results were available at the time of his trial).

We find no error in the trial court's denial of Appellant's post-conviction DNA motion and overrule Appellant's sole issue on appeal.

## III. CONCLUSION

Having overruled Appellant's sole issue, we affirm the trial court's order denying relief.


JEFF ALLEY, Justice

August 24, 2022

Before Rodriguez, C.J., Palafox, and Alley, JJ.

(Do Not Publish)

9