# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-23-00369-CR

**Fabian Mejia, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE 340TH DISTRICT COURT OF TOM GREEN COUNTY
### NO. C-22-0477-SA, THE HONORABLE JAY K. WEATHERBY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Fabian Mejia challenges his conviction for aggravated assault. *See* Tex. Penal Code § 22.02. In his sole issue, he contends that the trial court erred when it excluded admission of an audio recording of Mejia discussing the incident with a detective. Because we conclude that the evidence was excluded in error, that the error was constitutional, and that the error was not harmless, we reverse the trial court's judgment of conviction and remand to the trial court for further proceedings.

## BACKGROUND

Following a police investigation of a physical altercation between bar patrons that occurred in the parking lot around 1 a.m. and resulted in one of the involved individuals needing emergency surgery for a head wound, the State indicted Mejia for aggravated assault with a deadly weapon. The indictment alleged that Mejia had intentionally, knowingly, and recklessly caused

bodily injury to Jesse Flores by striking him with a bladed instrument, which was a deadly weapon in the manner it was used.

At trial, the State presented witness testimony from: multiple police officers and Detective Chase Hill regarding the investigation; from Flores and his two friends who were also involved, Juan Hernandez and Matthew Cadena; from the surgeon who treated Flores; and from two bartenders who witnessed the parking lot incident. The following exhibits were admitted into evidence: surveillance video and crime scene photos of the bar parking lot, Flores's injuries, the outside of Cadena's truck, and the outside and inside of Mejia's truck and its contents.

The surveillance video of the bar parking lot showed that Mejia slowly drove through the parking lot past the two trucks that Flores and his two friends were in. Mejia's brother was riding in the passenger seat of Mejia's truck. Flores and Cadena started walking alongside Mejia's truck. Then Mejia exited his truck and a physical altercation between Flores and Mejia ensued. Cadena, Hernandez, and Mejia's brother also got involved. Mejia got back in his truck and backed it up hitting his brother with the open passenger door and knocking him down. After Flores approached the driver's side of Mejia's truck again, Mejia got out of the truck, and another physical altercation started between Flores and Mejia and then quickly involved all five men. Mejia fell to the ground during the altercation and then got up and ran to his truck. Flores, Cadena, and Hernandez retreated to their two trucks. While the three friends were getting into their two trucks, Mejia's brother crawled into the back of Hernandez's truck, then exited it and got in Mejia's truck. Both parties left the parking lot. The two bartenders who testified as witnesses are seen on the surveillance video. One of the bartenders testified at trial that he called 911 and police arrived soon after the two groups had left. The three friends and the two bartenders all testified that some

2

kind of verbal altercation had occurred between the two groups inside the bar prior to the physical altercation that occurred in the parking lot.

Hernandez testified that when Mejia's truck pulled up behind his and Cadena's truck, Flores and Mejia "had some words." He testified that Mejia pulled out an "ax" that was about fourteen inches long and had a pointed side opposite the ax side, and Mejia started hitting Flores with the ax side. Hernandez testified that he grabbed the ax from Mejia's hand and threw it in the back of his truck. Officer Pedro Rodriguez testified that he responded to Hernandez's residence that night and observed and photographed what he described as blood stains on the outside of the truck and inside the bed of the truck. Hernandez testified that the blood on his truck was not there before he arrived at the bar that night.

Flores testified that he remembered getting out of Cadena's truck and approaching Mejia's truck. He explained that he did that because there was another exit out of the parking lot that Mejia could have gone towards and avoided driving past them, but instead Mejia drove past them with his window down. He testified that there was shouting back and forth between him and Mejia, but he could not recall the substance of what was said or what prompted Mejia to exit his truck. Flores testified that he remembered Mejia running at him with a weapon and striking him with it. He testified that he had a severe head injury and, as a result, he was at the hospital for five days and then a rehabilitation facility for two-and-a-half weeks to learn to walk again. He testified that he was using a walker when he left the rehabilitation facility and then transitioned to using a cane about three months later, which he used for about two months.

Doctor Joseph Hobbs, the neurosurgeon that treated Flores, testified that Flores suffered a serious head wound that included a skull fracture and "a little bruise to the brain." He agreed that Flores's injury was "a serious bodily injury," and explained that "it could have been a

3

fatal blow." He testified that he had seen this type of injury be caused by "ball-pein hammers" and "sharp objects . . . that come down with significant force." Dr. Hobbs testified that Flores initially had difficulty walking but fully recovered after three months of inpatient rehab.

Cadena testified that when he and Flores went to the parking lot, they saw that Mejia was still there and that they wanted to wait until he left because they were worried Mejia would follow them. Cadena explained that he circled the block in his truck and that when he saw Mejia still in the parking lot, he parked next to Hernandez to wait. Cadena testified that Flores got out of the truck to talk to Hernandez and find out why Hernandez had not left yet, when Mejia started to drive by with his window down. Cadena testified that Mejia started threatening them, but he also testified that he was in his truck at that point and could not hear what was being said. On redirect, Cadena confirmed that he could not remember what was said between Flores and Mejia. Cadena testified that he got out of his truck to deescalate the situation by telling Mejia to "go about their way" and telling Flores to get inside the truck. He testified that Flores started to go towards his truck and Mejia started to drive away but then Mejia started "saying things again" and Flores approached Mejia's truck again. Then Mejia got out of the truck and started hitting Flores with an "ax." Cadena explained that he got involved in the physical altercation because he realized Mejia had a weapon and that he would not have gotten involved if it had only been a one-on-one fist fight. Cadena testified that he and Hernandez stepped in and tried to take the weapon from Mejia. Cadena testified that the second time Flores and Mejia went "at it," Mejia hit Flores a couple more times and Mejia fell to the ground. Cadena testified that this is when he and Hernandez got the "hatchet" from Mejia and threw it in the back of Hernandez's truck. Cadena described the weapon as "a work hatchet" with "a hammer end . . . like you would use to take out nails" and a "blade" on the other side about a foot long. The bartender who called 911 during the

4

incident testified that he saw the weapon being retrieved from the back of the truck it was thrown into and that it was seven to eight inches across and had "a wood-cutting side and then a sharp-tip side."

Detective Hill testified that responding officers had located Mejia's truck and that he had them seize it. The next day Detective Hill was notified that Mejia had called dispatch looking for his truck. Detective Hill called Mejia and told him the truck had been seized in preparation for running a search warrant on it. Detective Hill told Mejia he wanted to get his account of the incident. At trial, Detective Hill answered affirmatively when asked if Mejia talked to him about the incident and that Mejia admitted he was at the scene and engaged in an altercation. When asked if Mejia admitted to using a weapon, Detective Hill first said, "No," but then clarified that after telling Mejia that there was video of the incident and that Detective Hill knew he had something in his hand, Mejia "began to say, if I did hit him with anything—he tried to recall some kind of an object, but wasn't able to identify what it was."

After the call, Detective Hill conducted a search of Mejia's truck pursuant to a search warrant. Photos of the truck were admitted, many of which depicted what Detective Hill described as "suspected blood" on the outside and inside of the truck. An employee name badge with Mejia's name on it was in the truck. Photos of the truck's contents included a pocketknife, three "edged weapon[s]," and "a head to an ax or hatchet."[1] On cross, Detective Hill admitted that although knives or ax-like tools were found in Mejia's truck, there was not a weapon with visible blood on it or that fully fit the description of the one used in the fight based on witness statements. Detective Hill suggested that the ax head that was found fit the description if the handle had broken

---

[1] The State argued in its closing that it did not believe that any of the weapons found in the truck were the one used in commission of the offense.

5

off after the incident. On cross, defense counsel offered, and the trial court admitted, additional photos of the objects found in Mejia's truck, which included camping and fishing gear and related items.

Outside the presence of the jury, defense counsel notified the trial court of his intention to cross-examine Detective Hill regarding other portions of his phone call with Mejia and of his intention to offer a redacted audio recording of the conversation. He then questioned Detective Hill outside the presence of the jury in anticipation of the State objecting to the admission of the redacted audio. Defense counsel moved to admit the redacted audio recording under the rule of optional completeness arguing that the State had opened the door by having asked questions about the phone call. The State objected on hearsay grounds. The trial court informed defense counsel that he would exclude the evidence when defense counsel moved to admit it, reasoning that optional completeness did not apply.

Defense counsel then cross-examined Detective Hill in the presence of the jury. After asking authentication questions regarding the audio, defense counsel moved to admit it, and the State objected that the rule of optional completeness did not apply because there was no misleading evidence to correct. Defense counsel reurged all his arguments made outside the presence of the jury regarding the issue. The trial court sustained the State's objection.

The audio was not admitted but was included in the record as an offer of proof. Based on the audio, in addition to the parts of the conversation Detective Hill testified to, Mejia also told Detective Hill that he believed it was a self-defense situation because Flores told him that if Mejia did not get out of the truck and fight him, then Flores would start shooting at the truck. Mejia explained to Detective Hill that Flores's threat is why he got out of his truck and fought Flores. Additionally, when asked about having a weapon in his hand, he told Detective Hill that

he could not remember having a weapon but that if he did, the thing that he would have grabbed was not hard enough to do the damage that was being described, but he could not remember what the item he was thinking of was called.

The defense rested without putting on additional evidence or calling any witnesses. Mejia did not testify. During the charge conference, defense counsel requested a self-defense instruction be included and provided the requested instruction in writing. The State objected that there was no evidence in the record that would support a charge of self-defense. The trial court clarified that there was no support for the charge in "[t]he evidence admitted into the case." The trial court denied the requested instruction. In closing, defense counsel argued that based on the surveillance video, something transpired during the time that Flores and Cadena approached Mejia's truck as he was leaving that caused him "to think he needed to get out." During its rebuttal, the State argued that "words alone, verbal provocation, does not get you an instruction on self-defense, and it certainly doesn't get you an instruction on use of deadly conduct, using lethal force to defend yourself; and that's why it's not in your jury charge."

After hearing all the evidence, the jury returned a guilty verdict. Following a punishment hearing, at which Mejia pleaded true to the enhancement allegation that he had previously been convicted of a felony offense, the trial court sentenced Mejia to eleven years' imprisonment. *See* Tex. Penal Code §§ 12.32 (establishing punishment range for first-degree felony offenses), .42(b) (establishing criteria for second-degree felony offenses to be punished under range for first-degree offenses), 22.02(b) (establishing offense of aggravated assault as second-degree felony offense).

7

**DISCUSSION**

In his sole issue on appeal, Mejia challenges the trial court's evidentiary ruling regarding the admissibility of the audio of the phone call between Mejia and Detective Hill.

*Error analysis*

Appellate courts review a trial court's ruling on the admission or exclusion of evidence for an abuse of discretion. *See Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011). Under that standard, a trial court's ruling will only be deemed an abuse of discretion if it is so clearly wrong as to lie outside "the zone of reasonable disagreement," *see Lopez v. State*, 86 S.W.3d 228, 230 (Tex. Crim. App. 2002), or is "arbitrary or unreasonable," *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005). Moreover, the ruling will be upheld provided that the trial court's decision "is reasonably supported by the record and is correct under any theory of law applicable to the case." *Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005). In addition, an appellate court reviews the trial court's ruling in light of the record before the court "at the time the ruling was made." *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002).

Hearsay, a statement made outside of court that is offered for its truth, is generally inadmissible unless an exception applies. *See* Tex. R. Evid. 801, 802. The rule of optional completeness is found in Rule 107 of the Rules of Evidence and provides an exception to the general hearsay rule. *Pena v. State*, 353 S.W.3d 797, 814 (Tex. Crim. App. 2011). It provides, in relevant part, as follows:

> If a party introduces part of an act, declaration, conversation, writing, or recorded statement, an adverse party may inquire into any other part on the same subject. An adverse party may also introduce any other act, declaration, conversation, writing, or recorded statement that is necessary to explain or allow the trier of fact to fully understand the part offered by the opponent.

8

Tex. R. Evid. 107. The purpose of this evidentiary rule is to reduce the possibility of the jury receiving a false impression from hearing only a part of some act, conversation, or writing. *Pena*, 353 S.W.3d at 814. To be invoked, it requires more than "mere reference to a document, statement, or act," but rather "permits the introduction of otherwise inadmissible evidence when that evidence is necessary to fully and fairly explain a matter 'opened up' by the adverse party." *Walters v. State*, 247 S.W.3d 204, 220–21 (Tex. Crim. App. 2007).

Here, Mejia contends that the trial court abused its discretion when it excluded the redacted audio of the phone call between Detective Hill and Mejia. He reasons that when the State elicited the testimony from Detective Hill regarding Mejia's account of the incident shared during that phone conversation, it opened up the matter of Mejia's complete account of the incident. He further reasons that by excluding any mention of Mejia's statements that he was acting in self-defense in response to Flores threatening to shoot into the truck if he did not get out and fight him, the jury was left with the false impression that they were told Mejia's whole story and that Mejia had admitted to being present and engaging in a physical altercation and that Mejia expressed confusion regarding whether he had used a weapon but that Mejia gave no explanation or defense when Detective Hill asked for his account of the incident.

In *Walters*, the Court of Criminal Appeals concluded that the audio recording of a second 911 call in which the defendant stated he shot his brother in self-defense was erroneously excluded. *See* 247 S.W.3d at 220–21. The Court concluded that the State had created a false impression with the jury that the defendant never admitted or explained why he shot the victim during either 911 call. *Id.* The Court explained:

> The record shows that the State's questioning of [two officers] left the jury with the impression, later emphasized during closing arguments, that appellant had not

9

given any explanation of the shooting immediately after the event. [One officer] testified that he asked [the defendant] if he wanted to talk about what had happened. That question hovered in the air, but the State cut the witness off and redirected him to other matters. The jury did not hear that, from the very beginning, [the defendant] told officers that he shot his brother in self-defense.

*Id.* at 220.

Here, Detective Hill testified that the purpose of the call was to get Mejia's account of the incident. He was then directed by the State to confirm that Mejia admitted to being involved in the physical altercation and was noncommittal in his response to whether he had a weapon at the time but left out that Mejia explained why he engaged in the fight. As in *Walters*, the jury was left with the false impression that Mejia's account of the incident included no explanation for engaging in the fight. *See id.* We conclude that the trial court abused its discretion when it excluded Mejia's evidence offered pursuant to the rule of optional completeness. *See* Tex. R. Evid. 107.

*Harm analysis*

"The erroneous exclusion of evidence offered under the rules of evidence generally constitutes non-constitutional error." *Walters*, 247 S.W.3d at 219. However, "an erroneous ruling excluding evidence might rise to the level of a constitutional violation if it effectively prevents the defendant from presenting his defensive theory." *Id.* "The fact that [a defendant] was not able to present his case in the form he desired does not amount to constitutional error when he was not prevented from presenting the substance of his defense to the jury." *See Valle v. State*, 109 S.W.3d 500, 507 (Tex. Crim. App. 2003) (holding constitutional error did not apply when defendant was able to present similar mitigation evidence).

The Court of Criminal Appeals has held that when the defendant is allowed to present his defense of self defense through some evidence, the erroneous exclusion of other self-

defense evidence does not rise to the level of constitutional error. *See Potier v. State*, 68 S.W.3d 657, 665–66 (Tex. Crim. App. 2002); *Walters*, 247 S.W.3d at 222 (explaining that "the erroneously excluded evidence was relevant to [defendant's] self-defense theory, but its exclusion did not prevent him from presenting a defense" when defendant testified regarding his self-defense theory). In *Walters*, the Court rejected Walters' argument that he was entitled to a constitutional harm analysis because the exclusion of the evidence had compelled him to testify when he otherwise would not have. 247 S.W.3d at 222. The Court explained that a defendant faces the "hard tactical choice" in such a situation to either testify and present the self-defense evidence himself or to choose "the option of refusing to testify and instead, if he is convicted, of obtaining appellate correction of the erroneous evidentiary ruling and with it a new trial." *Id.* (quoting *United States v. Paladino*, 401 F.3d 471, 477 (7th Cir. 2005)).

Here, Mejia chose not to testify, and the other eyewitnesses to the altercation testified that they either did not hear or did not remember what was said. There is no evidence in the record of any other witness that was available to testify and heard what was said. We conclude that because the erroneously excluded evidence formed the vital core of Mejia's theory of self-defense and the error effectively prevented him from presenting that defense, it constitutes constitutional error.

Constitutional error "is subject to harmless error review," in which "the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment." Tex. R. App. P. 44.2(a). Constitutional error does not contribute to the conviction if the verdict "would have been the same absent the error." *Clay v. State*, 240 S.W.3d 895, 904 (Tex. Crim. App. 2007). In determining "the likelihood that, absent the trial court's error, the jury verdict . . . would have been

11

the same, we must consider the entire record." *Id.* Appropriate factors for us to consider include the nature of the error, whether the error was emphasized by the State, the probable implications of the error, and the weight the jury likely would have assigned to the error in the course of its deliberations. *See Snowden v. State*, 353 S.W.3d 815, 822 (Tex. Crim. App. 2011).

Mejia contends that the error contributed to his conviction because the excluded evidence precluded him "from advancing his theory of self-defense." The State responds that Mejia would not have been entitled to a self-defense instruction because he did not confess to all of the elements of offense, including the requisite mental state. *See Shaw v. State*, 243 S.W.3d 647, 659 (Tex. Crim. App. 2007) (explaining that jury instruction for confession-and-avoidance defenses, like self-defense, "is only appropriate when the defendant's defensive evidence essentially admits to every element of the offense including the culpable mental state, but interposes the justification to excuse the otherwise criminal conduct" rather than merely "negate an element of the offense"). Indeed, "[s]elf-defense is a confession-and-avoidance defense requiring the defendant to admit to his otherwise illegal conduct," and a defendant "cannot both invoke self-defense and flatly deny the charged conduct." *Jordan v. State*, 593 S.W.3d 340, 343 (Tex. Crim. App. 2020). However, the confession-and-avoidance doctrine may be satisfied when the mental state may be reasonably inferred from the evidence regarding the circumstances surrounding the defendant's conduct and even when the evidence is inconsistent regarding confession of the elements. *See Juarez v. State*, 308 S.W.3d 398, 405 (Tex. Crim. App. 2010) (concluding confession-and-avoidance requirements satisfied despite defendant's inconsistent testimony alternatively admitting to the conduct and claiming it was an accident and concluding defendant's mental state "could have reasonably been inferred from his testimony about the circumstances surrounding his conduct"). Further, a "defendant is not required to testify in order

12

to be entitled to raise [self-]defense." *Wallace v. State*, 75 S.W.3d 576, 586 (Tex. App.—Texarkana 2002), aff'd, 106 S.W.3d 103 (Tex. Crim. App. 2003).

Here, the excluded evidence included Mejia's statement that he exited his truck to fight Flores because Flores threatened to shoot at him if he did not. *See Gonzales v. State*, 474 S.W.3d 345, 349 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd) (concluding defendant was entitled to self-defense instruction when officers testified that defendant exited victim's room while screaming, "He has a gun! It was self-defense!"). When combined with the excluded evidence, the video of the incident could have allowed for a reasonable inference regarding his mental state at the time of his conduct. *See Juarez*, 308 S.W.3d at 405. Also, when the State objected that there was no evidence in the record that would support Mejia's requested charge of self-defense, the trial court clarified that there was no support for the charge in "[t]he evidence admitted into the case." We conclude that the erroneously excluded evidence prevented Mejia from being able to develop his self-defense theory, which would have resulted in the inclusion of a self-defense instruction. *See* Tex. Penal Code § 9.31 (self-defense), .32 (deadly force in defense of person); *Luna v. State*, 687 S.W.3d 79, 107-08 (Tex. App.—Eastland 2024, pet. ref'd) ("Credibility of the evidence is for the jury to decide; the court's only role is to determine if there is some evidence—even if it is weak, inconsistent, or contradictory—that a rational jury could find that supports the defense).

As noted above, there was no evidence admitted in support of Mejia's self-defense theory. *See Saenz v. State*, 474 S.W.3d 47, 56 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (explaining that erroneous exclusion of admissible evidence that effectively denies defendant's ability to present defense that is provided by legislature is not harmless). Additionally, the error of excluding the admissible evidence was emphasized by the State in its rebuttal when it

highlighted that there was not a self-defense instruction in the jury charge. *See Snowden*, 353 S.W.3d at 822 (explaining that whether error was emphasized by State is appropriate factor for reviewing court to consider). Further, Mejia chose not to testify. *See Walters*, 247 S.W.3d at 222 (explaining that defendant faces "hard tactical choice" when self-defense evidence is erroneously excluded, which includes "the option of refusing to testify and instead, if he is convicted, of obtaining appellate correction of the erroneous evidentiary ruling and with it a new trial").

After reviewing the entire record, we cannot say beyond a reasonable doubt that the error of excluding Mejia's admissible self-defense evidence did not contribute to his conviction or punishment. *See* Tex. R. App. P. 44.2(a); *Wilson v. State*, 451 S.W.3d 880, 888 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) (concluding that erroneously excluded character witness testimony, which was only evidence of defense theory, was not harmless and reversing and remanding for new trial). Thus, we sustain Mejia's sole appellate issue.

## CONCLUSION

Having sustained Mejia's appellate issue, we reverse the trial court's judgment of conviction and remand this cause to the trial court for further proceedings.

_____

Gisela D. Triana, Justice

Before Justices Triana, Kelly and Crump

Reversed and Remanded

Filed: April 30, 2025

Do Not Publish

14